WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Schmidt,<br><br>          Plaintiff,<br><br>v.<br><br>AmerAssist A/R Solutions Incorporated,<br><br>          Defendant. | No. CV-20-00230-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for default judgment by Plaintiff Nicole Schmidt ("Schmidt") against Defendant AmerAssist A/R Solutions Incorporated ("AmerAssist"). (Doc. 18.) For the following reasons, the motion will be granted in part and denied in part.

I.    Factual Background

The following facts are derived from Schmidt's complaint. (Doc. 1.) Schmidt brought this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (Doc. 1 ¶ 1.) Schmidt signed up for dental services with Smile Direct Club but then returned the unused products with the company's promise that she would receive a refund. (*Id.* ¶¶ 8-10.) In June 2019, AmerAssist, a debt collection agency (*id.* ¶¶ 5-6), began pursuing efforts to collect a supposed debt arising out of this transaction, including by calling Schmidt's cellular phone. (*Id.* ¶¶ 10-12.) Schmidt told AmerAssist that she did not owe any debt and requested that AmerAssist not contact her again. (*Id.* ¶¶ 14-15.)

In August 2019, Smile Direct Club issued Schmidt a refund and told AmerAssist to cease its collection efforts. (*Id.* ¶ 17.) Nevertheless, AmerAssist "continued to place collection calls and send [Schmidt] collection letters attempting to collect the alleged subject debt." (*Id.* ¶ 18.) Schmidt demanded "on no less than 13 separate occasions" that AmerAssist stop contacting her, but AmerAssist kept doing so. (*Id.* ¶¶ 19-21.)

II.  Procedural History

On January 31, 2020, Schmidt filed the complaint. (Doc. 1.)

On February 4, 2020, Schmidt filed proof of service as to AmerAssist. (Doc. 6.)

On June 10, 2020, the Court ordered Schmidt to file a memorandum showing cause why the case should not be dismissed for failure to prosecute. (Doc. 13.)

On June 24, 2020, Schmidt filed her response, explaining that she and AmerAssist were engaged in "active discussions in effort to find a resolution of [the] matter." (Doc. 14 ¶ 5.) Schmidt requested fourteen days for the parties to resolve the matter or for AmerAssist to answer the complaint. (*Id.* ¶ 6.)

On June 25, 2020, the Court ordered AmerAssist to respond to the complaint by July 9, 2020 and ordered Schmidt to file an application for entry of default by July 10, 2020 if AmerAssist did not answer. (Doc. 15.) AmerAssist has not yet responded to the complaint, nor has it appeared in this action.

On July 10, 2020, Schmidt applied for an entry of default against AmerAssist. (Doc. 16.)

On July 13, 2020, the Clerk of Court entered default against AmerAssist. (Doc. 17.)

On July 21, 2020, Schmidt moved for default judgment. (Doc. 18.)

**DISCUSSION**

I.  Default Judgment Standard

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of

the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II.     The First, Fifth, Sixth, And Seventh *Eitel* Factors

"In cases like this one, in which Defendant[] [has] not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020.)

The first *Eitel* factor weighs in favor of default judgment. If the motion for default judgment were denied, Schmidt would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to AmerAssist's failure to participate, there is no dispute over material facts (except as to damages) and no indication that default is due to excusable neglect. Indeed, according to Schmidt's response to the order to show cause, AmerAssist was not only aware of this action upon service but also engaged in settlement discussions with Schmidt. (Doc. 14.)

The seventh factor generally weighs against default judgment, given that cases "should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted). Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt. Defendants who appear to be

'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 55, at 119-20 (2020) (footnote omitted).

### III. The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Here, Schmidt seeks a total of $19,446.75, composed of $16,000 in statutory damages ($1,000 in statutory damages under the FDCPA and $15,000 in statutory damages under the TCPA), $2,858.75 in attorneys' fees, and $588 in costs. (Doc. 18 at 3; Doc. 18-1 at 1-2.)

In Part IV below, the Court addresses the sufficiency of Schmidt's evidence as to each claimed category of damages. For purposes of the fourth *Eitel* factor, the Court simply notes that, in light of the seriousness of AmerAssist's conduct (*i.e.*, continuing to attempt to collect a non-existent debt from Schmidt after repeated cease-and-desist requests from Schmidt and after being told by Smile Direct Club to cease collections), the requested award, although substantial, would not be excessive. *Cf. G&G Closed Circuit Events LLC v. Espinoza*, 2020 WL 377095, *3 (D. Ariz. 2020) (fourth factor may weigh in favor of default judgment where the plaintiff "seeks only statutory damages that consist[] of discretionary awards and statutory minimums") (alteration in original) (internal quotation marks omitted).

### IV. The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (alterations in original) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id.*

Here, both factors weigh in favor of granting default judgment. Taken as true, the factual allegations in the complaint establish that AmerAssist violated the FDCPA and the

TCPA (although one of Schmidt's FDCPA theories of liability is inadequately pleaded).

A. **FDCPA**

Schmidt alleges that AmerAssist's communications violated the following provisions of the FDCPA: (1) 15 U.S.C. § 1692c(a)(1); (2) 15 U.S.C. § 1692d and d(5); and (3) 15 U.S.C. § 1692e, e(2), and e(10). (Doc. 1 ¶¶ 31-48.) The Court will address the sufficiency of the complaint as to each alleged violation.

1. *Section 1692c(a)(1)*

Under § 1692c(a)(1), a debt collector[1] may not attempt to communicate with a consumer to collect a debt at an "unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. . . . [A] debt collector shall assume that the convenient time for communicating with a consumer" is between 8:00 a.m. and 9:00 p.m. in the consumer's local time. Here, although Schmidt alleges that AmerAssist called her "over and over after she demanded that it cease contacting her" (Doc. 1 ¶ 39), Schmidt does not allege that the calls occurred before 8:00 a.m. or after 9:00 p.m., nor does Schmidt allege that AmerAssist knew or should have known that it was contacting her at an inconvenient time. Accordingly, even assuming the truth of Schmidt's allegations, the complaint does not establish a violation of § 1692c(a)(1).

2. *Section 1692d And d(5)*

Under § 1692d, a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The statute identifies a non-exhaustive list of prohibited conduct, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called

---

[1] Schmidt has sufficiently alleged that she is a "consumer," that AmerAssist is a "debt collector," and that AmerAssist was seeking to collect a "debt" within the meaning of the FDCPA. (Doc. 1 ¶¶ 32-35.) Schmidt is a "natural person . . . allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The allegations in paragraph 6 of the complaint establish that AmerAssist "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). And the allegations in paragraph 8 of the complaint establish that the amount Schmidt allegedly owed to Smile Direct Club was an "alleged obligation of [Schmidt] to pay money arising out of a transaction in which the . . . property . . . or services . . . which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

- 5 -

number." *Id.* § 1692d(5).

Here, Schmidt alleges that AmerAssist "continued to place collection calls" to her, even though she had "demanded [AmerAssist] to cease contacting her on no less than 13 separate occasions." (Doc. 1 ¶¶ 18-19.) AmerAssist "continued to call [Schmidt's] cellular phone, at times even calling twice a day, and on back to back days." (*Id.* ¶ 20.) Schmidt also alleges that AmerAssist told her multiple times that "her number would be removed from the 'system' to no avail." (*Id.* ¶ 19.) Schmidt alleges that these calls continued even after Smile Direct Club instructed AmerAssist to cease collection efforts. (*Id.* ¶¶ 17-20.) Schmidt alleges that AmerAssist's conduct was intentional "by calling with such frequency as can be reasonably expected to harass." (*Id.* ¶ 25.)

Schmidt's allegations, taken as true, establish that AmerAssist violated § 1692d(5). AmerAssist caused Schmidt's cellular phone to ring and engaged her in telephone conversation repeatedly and continuously. Although Schmidt's allegations concerning intent are slim (Doc. 1 ¶ 25), other courts have granted motions for default judgment under similar facts (and based on more conclusory allegations). *See, e.g.*, *Murphy v. Ability Recovery Servs., LLC*, 2019 WL 7708592, *2 (W.D. Pa. 2019) (finding a violation of § 1692d(5) "clearly" established by factual allegations that the debt collector repeatedly continued to call the consumer after the consumer asked for the calls to stop); *Sellers v. Direct Recovery Servs., LLC*, 2018 WL 4708207, *2 (E.D. Mich. 2018) (finding defendant violated § 1692d(5) by "repeatedly calling Plaintiff even after she requested the phone calls to stop"); *Alston v. Summit Receivables*, 2018 WL 3448595, *5 (M.D. Fla. 2018) (same).

    3. *Section 1692e, e(2), and e(10)*

Under § 1692e, a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute identifies a non-exhaustive list of prohibited conduct, including conduct in which a debt collector falsely represents the "character, amount, or legal status of any debt" or uses "any false representation or deceptive means to collect or attempt to collect any debt." *Id.* §§ 1692e(2), e(10). "[W]hether conduct violates [§ 1692e] . . . requires an objective

analysis that considers whether the least sophisticated debtor would likely be misled by a communication." *Donohue v. Quick Collect Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (quotation omitted).  The Ninth Circuit has adopted the "materiality" approach in answering this question: "[F]alse but nonmaterial representations are not likely to mislead the least sophisticated consumer and therefore are not actionable." *Id.*

Schmidt primarily alleges that AmerAssist falsely represented that she owed a debt, despite knowing otherwise. (Doc. 1 ¶¶ 45-46.)  These allegations, taken as true, establish a violation of § 1692e(2) and e(10).  Both Schmidt and Smile Direct Club informed AmerAssist that Schmidt did not owe a debt to Smile Direct Club, yet AmerAssist continued to represent that Schmidt owed a debt.  The least sophisticated consumer could have been deceived by AmerAssist's assertion that the consumer owed a debt when the consumer, in fact, owed nothing.  Other courts have granted motions for default judgment under similar facts.  *See, e.g.*, *Ford v. Recovery Sols. Grp., LLC*, 2019 WL 2359561, *2 (M.D. La. 2019) ("[T]aking as true that Plaintiff did not owe the debt, the Court concludes that Plaintiff has properly asserted that Defendant violated 15 U.S.C. 1692e(2)(a)."); *Carlisle v. Nat'l Com. Servs., Inc.*, 2017 WL 1075088, *6 (N.D. Ga. 2017) (finding the plaintiff had plausibly established a violation of § 1692e(2) where debt collector had "repeatedly sought different sums from Plaintiff in connection with the . . . debt even though Plaintiff had already paid the balance in full").

B.   **TCPA**

Under the TCPA, it is unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system" to "any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States."  47 U.S.C. § 227(b)(1)(A)(iii).[2]  To establish a TCPA claim, a

---

[2]   The exception for calls made to collect government-owned or -guaranteed debt was recently invalidated and severed by the Supreme Court. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2235, 2344 (2020). Schmidt has not alleged that her purported debt was owned or guaranteed by the government, so *Barr* does not affect this case.

plaintiff must show that (1) "the defendant called a cellular telephone number," (2) "using an automatic telephone dialing system," (3) "without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). An automatic telephone dialing system ("ATDS") is statutorily defined as "equipment" having the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator" and to "dial such numbers." 47 U.S.C. § 227(a)(1).

Schmidt's allegations are sufficient to establish a violation of the TCPA. Schmidt alleges that AmerAssist made multiple calls to her cellular phone. (Doc. 1 ¶¶ 12-13, 18-20.) Under current Ninth Circuit precedent, Schmidt has adequately alleged that AmerAssist utilized an ATDS to place those calls.[3] For example, Schmidt alleges that, upon answering AmerAssist's phone call, she was met with approximately three seconds of "dead air," after which she was connected with a live agent. (*Id.* ¶ 22-23.) Schmidt also alleges that these calls were without her consent and that she expressly demanded that AmerAssist stop calling her. (*Id.* ¶¶ 19-21, 24.) And Schmidt has alleged that the calls were made to collect an alleged debt and were thus not made for an emergency purpose. (*Id.* ¶ 12.)

Other courts have found similar allegations sufficient to establish a TCPA violation for default judgment purposes. *See, e.g.*, *Mendoza v. Cap. Accounts, LLC*, 2020 WL 2487854, *1-2 (M.D. Fla. 2020) (TCPA violation established where the plaintiff surmised an ATDS was used due to "several seconds of dead air" before someone spoke and where

---

[3]  Schmidt provides only conclusory allegations that the purported ATDS utilized by AmerAssist featured "a random or sequential number generator." (Doc. 1 ¶ 54 ["Upon information and belief, Defendant's phone system stores telephone numbers to be called, using a random or sequential number generator, which it used to call Plaintiff on her cellular phone."].) The Ninth Circuit, however, has held that an ATDS "need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to store numbers to be called and to dial such numbers automatically." *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019) (internal quotation marks omitted). The Supreme Court recently granted *certiorari* in *Duguid* to decide whether this definitional approach is correct. *Facebook, Inc. v. Duguid*, — S. Ct. —, 2020 WL 3865252, *1 (2020) (Mem.). AmerAssist has not appeared in this action to request a stay pending the Supreme Court's decision. For now, the Court is bound by Ninth Circuit precedent holding that equipment need not use a random or sequential number generator to qualify as an ATDS.

debt collector called the plaintiff at least 10 times on cellular phone); *McCarver v. Cap. One, N.A.*, 2020 WL 2141804, *3 (C.D. Cal. 2020) ("Courts in this Circuit have held that experiencing 'dead air' on several calls may raise a reasonable inference that the caller is using an ATDS.").

V.  Balancing The Factors

Having considered all of the *Eitel* factors, the Court concludes that default judgment is appropriate.

VI.  Damages, Attorneys' Fees, And Costs

As noted, Schmidt seeks $16,000 in damages, $2,858.75 in attorneys' fees, and $588 in costs. Each category is addressed below.[4]

   A.  **FDCPA Statutory Damages**

"[A]ny debt collector who fails to comply with [the FDCPA] with respect to any person is liable to such person" for (1) actual damages, (2) statutory damages up to $1,000, and (3) reasonable attorneys' fees and costs. 15 U.S.C. § 1692k(a). Schmidt does not seek actual damages. (Doc. 18 at 3.)

In calculating the amount of damages to be awarded in an FDCPA action, courts must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Here, the complaint establishes that AmerAssist frequently and persistently attempted to collect a debt which Schmidt and Smile Direct Club asserted Schmidt did not owe, sometimes calling "twice a day, and on back to back days." (Doc. 1 ¶¶ 15, 17, 19-20.) As discussed above, the complaint establishes that the nature of AmerAssist's noncompliance consisted of harassment and false representations. Last, the complaint establishes that AmerAssist's noncompliance was intentional, because AmerAssist assured Schmidt that her number would be taken out of its system and because both Schmidt and Smile Direct Club put AmerAssist on notice to stop collection efforts,

---

[4] The complaint also includes claims for actual damages under the FDCPA (Doc. 1 ¶ 48(c)) and injunctive relief (*id.* ¶¶ 48(b), 61(c)), but Schmidt does not repeat those requests in her motion.

yet AmerAssist continued calling. (*Id.* ¶¶ 17-21, 26.)

Accordingly, the Court will award $1,000 in statutory damages under the FDCPA.

B. **TCPA Statutory Damages**

The TCPA authorizes an individual to bring an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). The Court may, in its discretion, award up to treble statutory damages against a defendant that "willfully or knowingly violated" the TCPA. *Id.* § 227(b)(3).

Schmidt requests treble statutory damages of $1,500 per call for 10 calls made by AmerAssist, totaling $15,000 in damages. (Doc. 18 ¶ 9.) The Court finds that an award for 10 calls is supported by the factual allegations deemed admitted by AmerAssist's default: Schmidt "demanded [AmerAssist] to cease contacting her on no less than 13 separate occasions." (Doc. 1 ¶ 19.) The Court also concludes that treble damages are appropriate because AmerAssist's violations of the TCPA were willful or knowing— Schmidt had to request that AmerAssist cease calling her "on no less than 13 separate occasions," and Smile Direct Club told AmerAssist to cease collection efforts, yet AmerAssist continued anyway. (*Id.* ¶ 17-20.) Other courts have authorized the full $1,500 per call award under similar circumstances. *See, e.g.*, *Mendoza*, 2020 WL 2487854, at *2-3 (authorizing treble damages for 12 separate calls where "defendant had been informed multiple times . . . that plaintiff wished defendant to stop calling").

Accordingly, the Court will award $15,000 in statutory damages under the TCPA.

C. **Attorneys' Fees**

The FDCPA requires an offending debt collector to pay a successful plaintiff's reasonable attorneys' fees and costs. 15 U.S.C. § 1692k(a)(3). Schmidt requests attorneys' fees totaling $2,858.75, consisting of 6.3 hours spent by counsel Alexander J. Taylor at the hourly rate of $425 and for 1.45 hours spent by paralegal Laura Dixon at the hourly rate of $125.

Although Schmidt submitted a table purporting to summarize Mr. Taylor's and Ms.

Dixon's hourly rates, the time spent on specific tasks, and descriptions of the tasks, Schmidt did not submit any evidence or affidavit to verify these records. The Court declines to grant attorneys' fees to Schmidt on this record. *De Lage Landen Fin. Servs. Inc. v. Dynamic Imaging Distrib.*, 2020 WL 3050412, *2 (D. Ariz. 2020) ("Plaintiff did not submit any accounting records or affidavits to verify the requested amount of attorney's fees and costs. In addition, Plaintiff's counsel did not submit any accounting records or affidavits justifying the claim for attorney's fees and costs. Therefore, the Court finds that Plaintiff has not sufficiently proven its entitlement to attorney's fees and costs in this case.").

### D. **Costs**

Schmidt also seeks $588 in costs, composed of a $400 filing fee, an $88 service fee (presumably to serve process on AmerAssist, but Schmidt does not elaborate on its meaning), and a $100 *pro hac vice* fee. (Doc. 18-1 at 2.) Although Schmidt attaches no evidence or affidavit to support her claim for costs, the Court will order reimbursement for the $400 filing fee and $100 *pro hac vice* fee, given that this suit was filed (Doc. 3) and Schmidt's counsel was admitted *pro hac vice*. The Court will decline to grant Schmidt the cost of service because she failed to attach any evidence of this cost.[5]

### E. **"Judgment Interest"**

In her motion, Schmidt requests that "judgment interest to be added." (Doc. 18 at 3.) Schmidt does not provide any justification or support for her alleged entitlement to judgment interest, nor does Schmidt identify whether she is seeking pre-judgment interest or post-judgment interest (or both). The Court will thus decline to make any special allowance for "judgment interest."

…

…

…

…

---

[5] Schmidt did not attach any receipts or an affidavit establishing that the cost was incurred, nor did the process server set out the fee. (Doc. 6 at 2.)

Accordingly,

**IT IS ORDERED** that the motion for default judgment (Doc. 18) is **granted in part and denied in part**. A separate judgment against AmerAssist will issue, after which the Clerk of Court shall terminate this action.

Dated this 19th day of October, 2020.

Dominic W. Lanza
United States District Judge